IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WENDELL RENARD LINDSAY II, | ) | CASE NO.  1:23-CV-01649-JRA |
| | ) | |
| Petitioner, | ) | |
| | ) | UNITED STATES DISTRICT JUDGE |
| vs. | ) | JOHN R. ADAMS |
| | ) | |
| WARDEN TOM WATSON, | ) | |
| | ) | MAGISTRATE JUDGE |
| Respondent. | ) | JONATHAN D. GREENBERG |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the

Petition of Wendell Renard Lindsay, II ("Lindsay" or "Petitioner"), for a Writ of Habeas Corpus filed

pursuant to 28 U.S.C. § 2254. Lindsay is in the custody of the North Central Correctional Complex, pursuant

to journal entry of sentence in the case *State of Ohio vs. Lindsay*, Case No. 2010-CR-0419 D. For the

following reasons, the undersigned recommends that Lindsay's claims not be found as "second or

successive" and that the Petition BE DENIED.

## I.     Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state

court, factual determinations made by state courts are presumed correct unless rebutted by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir.

2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the

facts underlying Lindsay's conviction as follows:

> {¶ 2} On March 4, 2010, ten-year-old N.J. approached her guidance
> counselor at school and told her "my mother's boyfriend has been raping
> me." (T. 197). During the investigation into the sexual assault, N.J.
> disclosed that her mother's boyfriend, appellant, had come into the room

1

that she shared with her younger sister on the morning of March 4th, pulled down her underwear and stuck his tongue in her vagina. (T. at 198; 269). This was not the first time a sexual incident had occurred. All in all, N.J. told the social worker who interviewed her that the appellant had placed his mouth on her vagina approximately six times and penetrated her vagina with his penis a total of seven times. (T. at 271).

{¶ 3} After the disclosures, N.J.'s father took her to the hospital for a sexual assault examination. The nurse who performed the exam found physical evidence consistent with N.J.'s allegations. As part of the examination, swabs were taken of the victim's vaginal area and the panties she was wearing at the time of the examination were collected. DNA collected from the panties and the vaginal area of N.J. was consistent with the appellant's DNA.

*State v. Lindsay*, 2011-Ohio-4747, ¶¶ 2-3 (Ohio App. Ct. Sept. 19, 2011).

## II.    Procedural History

**A.    Trial Court Proceedings**

On July 9, 2010, the Richland County Grand Jury indicted Lindsay on the following charges: five counts of rape in violation of O.R.C. § 2007(02)(A)(1)(b), a felony of the first degree; five counts of sexual battery in violation of O.R.C. § 2097.03(A)(5), a felony of the second degree, and five counts of gross sexual imposition, in violation of O.R.C. § 2907.05(A)(4), a felony of the third degree. (Doc. No. 7-2, Case No. 1:13-CV-00309.)

A jury found Lindsay guilty of one count of rape, one count of sexual battery, and one count of gross sexual imposition. (Doc. No. 12-1, Ex. 1.)  The jury returned verdicts of not guilty on the remaining charges. (Doc. No. 12-1, Ex. 12.)

On October 25, 2010, the State requested to amend the Indictment to change Count IV to read in part "between on or about the 1st day of October 2009 and on or about the 4th day of March 2010," replacing "on or about the 4th day of March 2010." (Doc. No. 12-1, Ex. 10.) The trial court granted the amendment. (*Id*.)

On October 27, 2010, the trial court held a sentencing hearing. (Doc. No. 12-1, Ex. 1.) The trial court merged the offenses for sentencing purposes and sentenced Lindsay to serve ten years to life in prison with five years post release control, and classified Lindsay as a Tier I Sex Offender/Child Victim Offender. (*Id.*)

**B.      Direct Appeal**

Lindsay timely appealed, and the state appellate court affirmed his conviction and sentence in September 2011. *State v. Lindsay*, 5th Dist. Richland No. 2010-CA0134, 2011-Ohio-4747. In December 2011, Lindsay, proceeding *pro se*, filed a Rule 26(B) Application to reopen his appeal, citing ineffective assistance of counsel. (Doc. No. 12-1, Ex. 2, citing Doc. No. 7-16 of Case No. 1:13-CV-00309.) In January 2023, the state appellate court denied his Application.  (*Id.*, citing Doc. No. 7-18.) Lindsay appealed to the Ohio Supreme Court, which declined jurisdiction and dismissed his appeal in May 2012. (*Id.*, citing Doc. Nos. 7-20, 7-23.)

**C.      First Habeas Petition**

This is not Lindsay's first habeas petition before this Court. Lindsay filed a prior habeas petition on February 12, 2013, in the Northern District of Ohio, Eastern Division, Case No. 1:13cv309, *Wendell Lindsay v. Terry A. Tibbals, Warden,* Doc. 1, Petition 1:13CV309. On February 29, 2016, this Court adopted the Report and Recommendation of Magistrate Judge Vecchiarelli and dismissed Lindsay's petition. (Doc. No. 12-1, Ex. 3.) The Sixth Circuit Court of Appeals denied Lindsay's Motion for a Certificate of Appealability. (Doc. 29, True Copy of Order from USCA, Case No. 1:13-CV-00309.)

**D.      Motion for New Trial and Appeal**

On May 3, 2019, Lindsay, proceeding *pro se*, filed a motion for leave to file a motion for a new trial based on newly discovered evidence.[1] (Doc. No. 12-1, Ex. 4.) On May 16, 2019, the State responded in

---

[1] Lindsay's motion is captioned, "Motion for Leave; to File a Motion For New Trial, Based on Newly Discovered Evidence Criminal Rule 33(B); R.C. §2945.80, Due to Prosecutorial Misconduct; R.C. § 2945.79, By Committing Fraud on The Court, and Instrinsic [Sic] Fraud; Felony Perjury R.C.§ 2921.11".

opposition. (Doc. No. 12-1, Ex. 5.) On May 24, 2019, Lindsay filed an "Amendment to Defendant's Leave to File for a New Trial." (Doc. No. 12-1, Ex. 6.) On June 10, 2019, the trial court denied Lindsay's motion. (Doc. No. 12-1, Ex. 7.) On June 17, 2019, Lindsay filed a "Second Amendment to Leave to File New Trial/Clarifying Arguments Factual Base, and Attaching Exhibit K-11, The Affidavit for Search Warrant." (Doc. No. 12-1, Ex. 8.) On July 15, 2019, the trial court overruled the motion. (*Id*. at Ex. 7.)

On June 25, 2019, Lindsay appealed to the Fifth District Court of Appeals. (Doc. No. 12-1, Ex. 9-10.) In his appellate brief, Lindsay raised the following points of error:

I.      The trial court allowed the prosecution to commit purgury [sic]; pursuant to R.C. 2921.11, in the complaint to the grand jury, causing them to return an indictment containing therein, fraudulent information that was knowingly presented; in doing so, violated the appellant's due process of law rights, and also violating appellant's equal protection of the law rights guaranteed him, by both the Constitution of the United States and the Ohio Constitution.

II.     The Appellant was denied due process of the law during the judicial process; the constitutional provision that prohibit the government from unfairly or arbitrarily depriving any person of life, liberty, or property; the Fourteenth Amendment of the Constitution of the United States incorporates the Due Process Clause of the Fifth Amendment's doctrine; also, the Equal Protection Clause, guaranteeing the fundamental fairness doctrine; that a protection based on an indictment fraudulantly [sic] obtained through the use of false information, (perjury) [sic], discovered to be manipulated and hid from the trial court, and the defense, is grounds to grant a new trial.

(Doc. No. 12-1, Ex. 10.)

The State filed a brief in response. (Doc. No. 12-1, Ex. 11.) On December 19, 2019, the state appellate court overruled all assignments of error and affirmed the trial court's judgment. (Doc. No. 12-1, Ex. 12.) On January 7, 2020, Lindsay requested reconsideration. (Doc. No. 12-1, Ex. 13.) On January 21, 2020, the state appellate court denied his request. (Doc. No. 12-1, Ex. 14.)

### E.    Motion to Vacate Sentence

On September 30, 2019, Lindsay filed a motion to vacate his sentence alleging errors in the indictment.[2] (Doc. No. 12-1, Ex. 15.) On December 26, 2019, the trial court overruled the motion. (Doc. No. 12-1, Ex. 16.) On January 6, 2020, Lindsay filed a "Response To Judgment Entry Overruling Defendant's Motion To Vacate Sentence That Was Void *Ab Initio*, And Pursuant To Criminal Rule 25(B); Plain Error." (Doc. No. 12-1, Ex. 17.) On January 23, 2020, the trial court overruled the motion. (Doc. No. 12-1, Ex. 18.)

### F.    Sentence Modification and Appeal

On December 29, 2020, Lindsay filed a motion to have his sentence modified pursuant to O.R.C. § 2945.75, alleging defects with the jury verdict form.[3] (Doc. No. 12-1, Ex. 19.) On January 22, 2021, the trial court overruled the motion. (Doc. No. 12-1, Ex. 20.)

On February 24, 2021, Lindsay timely filed a notice of appeal with the state appellate court, challenging the trial court's January 22, 2021 entry denying his motion for sentence modification. (Doc. No. 12-1, Ex. 21.) The State opposed, arguing Lindsay's claims had been raised before and were without merit. (Doc. No. 12-1, Ex. 23.)

On March 24, 2021, Lindsay filed a motion titled "Compelling Arguments In Support Of This Courts [sic] Jurisdiction" with the state appellate court. (Doc. No. 12-1, Ex. 24.) On May 5, 2021, the court opted to treat Lindsay's filing as a motion for delayed appeal, and allowed him until May 17, 2021 to file a response. (Doc. No. 12-1, Ex. 25.) On July 6, 2021, the court denied his motion for a delayed appeal. (Doc. No. 12-1, Ex. 26.) On July 15, 2021, Lindsay asked for reconsideration, asserting his motion was a "notice

---

[2] Lindsay's motion is captioned, "Motion: to Vacate Void Sentence: Void Ab Initio, and Pursuant to Criminal Rule 52(B); Plain Error, the Trial Court Did Not Have Jurisdiction".

[3] Lindsay's motion is captioned, "Motion for Sentence Modification Pursuant to R.C. § 2945.75; Jury Verdict Form Not In Compliance With The Law".

of appeal" and cited delays due to COVID-19 restrictions. (Doc. No. 12-1, Ex. 27.) On September 1, 2021, the state appellate court denied his motion.  (Doc. No. 12-1, Ex. 28.)

### G.    Motion for Resentencing and Appeal

On July 26, 2021, Lindsay filed a motion with the trial court for resentencing/sentence modification alleging that the verdict forms were not in compliance with O.R.C. § 2945.75, noting in his caption "this argument can be brought up any time."[4] (Doc. No. 12-1, Ex. 29.) The State filed a reply, arguing Lindsay's motion was barred by *res judicata*. (Doc. No. 12-1, Ex. 30.) On August 5, 2021, Lindsay filed a "Reply To Prosecution's Memorandum & To Again, Bring Judicial Notice Of Defendant's Void Sentence." (Doc. No. 12-1, Ex. 31.) On August 10, 2021, the trial court denied his motion. (Doc. No. 12-1, Ex. 32.)

Lindsay appealed this judgment. (Doc. No. 12-1, Ex. 33.) In his appellate brief, Lindsay raised the following assignments of error:

I.    The appellant's sentence is contrary to law, and "res judicata" should not be used as "tactical advantage," a strategy or tool used to avoid a proper review of the issues presented; when the appellant's [sic] has brought forth that a miscarriage of justice occurred, and the lower trial court, has ignored the issues of double-jeopardy, verdict forms not being in compliance pursuant to R.C. § 2945.75(A)(2); no elements were provided to distinguish what the jury intended for the trial judge to sentence on; how the sentence was enhanced from the lowest felony conviction to the highest: and pursuant to R.C. § 2941.25, how the trial court sentenced the appellant when using "animus," when if how the correct term, "allied offense" was used, the sentence would have become void, due to there were more convictions than allowed.

II.   The sentence is a manifest miscarriage of justice when it does not comport with the controlling statutes; R.C. § 2945.75(A)(2), when a Pelfrey issue exist, but hidden due to double jeopardy issues; a violation of R.C. § 2941.25, specifying that their [sic] can only be one conviction for allied offenses of similar import; the trial court used the word "animus" for the purpose of sentencing, and as to enable the sentence enhancement without any listed element written in the verdict form, when the sentence was already jurisdictionally void: and while "res judicata" does not preclude appellate court review.

---

[4] Lindsay's motion is captioned, "Motion: Resentencing/Sentencing Modification Verdict Form Not in Complience [Sic] Pursuant to R.C. § 2945.75 The Sentence is Void, Plain Error Occurred, and This Argument Can Be Brought Up At Any Time".

(Doc. No. 12-1, Ex. 34.)

On November 4, 2021, the State filed a brief in response, asserting Lindsay's arguments were barred by *res judicata*. (Doc. No. 12-1, Ex. 35.) On November 17, 2021, Lindsay replied.  (Doc. No. 12-1, Ex. 36.) On December 22, 2021, the state appellate court affirmed the trial court's decision.  (Doc. No. 12-1, Ex. 37.)

On January 31, 2022, Lindsay appealed to the Ohio Supreme Court. (Doc. No. 12-1, Ex. 38.) Although Lindsay's memorandum in support of jurisdiction was one continuous document with numbered paragraphs, Lindsay appeared to raise the following assignments of error:

I.     His sentence was contrary to law.

II.    His sentence was a miscarriage of justice.

(Doc. No. 12-1, Ex. 39.)

On March 1, 2022, the State filed a response, asserting the case failed to involve a substantial constitutional question and was not of great public or general interest. (Doc. No. 12-1, Ex. 40.) On April 12, 2022, the Ohio Supreme Court declined to accept jurisdiction.  (Doc. No. 12-1, Ex. 41.)

**H.     State Habeas Petition and Appeal**

While his appeal was pending, on December 3, 2021, Lindsay filed a habeas petition to the Third District Court of Appeals, Marion County, Ohio. (Doc. No. 12-1, Ex. 42.)[5] As the Third District Court of Appeals explained:

> In his complaint seeking a writ of habeas corpus, Relator alleges that he received a written correspondence from the Department of Rehabilitation and Correction ("DRC") and the Adult Parole Authority ("APA") informing him that he had been granted parole and was scheduled for release on June 17, 2021. Relator subsequently received additional written information concerning his re-entry into the general population, such as his eligibility

---

[5] As the Commissioner notes, Lindsay did not list his individual grounds for relief in this habeas petition, so they are not easily replicated for purposes of this procedural history. (Doc. No. 12, p. 4, n.3.) The Commissioner asserts, and the Court agrees, that Lindsay's complaints are similar to those raised to the Ohio Supreme Court. (*Id.*)

for certain government assistance programs, the procedure for reinstating his driver's license, an explanation of the APA grievance procedure, and a waiver of extradition for individuals placed on parole/postrelease control. (Compl. Ex. B.) Relator further alleges that on June 17, 2021, he was called into the institution's receiving and discharge office and told by the attending officer that "you have been released" and to gather all his personal belongings. (Compl. P.4, ¶ 11).

Relator alleges that the unit manager observed him with his personal property and asked the attending clerk where Relator was going. The clerk responded that Relator had been paroled. Relator alleges that the unit manager made a phone call and ran into her office. As Relator changed into his personal clothing and sat for a photo for his new state-issued I.D., he claimed that the chief unit manager rushed into the receiving and discharge office yelling that there had been a mistake and that Relator would not be released. Relator was then sent back to his housing unit.

Relator later received letters from the DRC apologizing for the confusion at the institution regarding his release and explaining that he was sentenced under S.B. 260, also known as the Sexually Violent Predator Sentencing Law, based upon the age of the victim and the nature of his offense. (Compl. Ex. E, F.) The DRC further explained that Relator is subject to a biennial review by the parole board to determine his suitability for a hearing to consider his release, and that one of these reviews occurred on June 15, 2021. At this review, the Parole Board voted against conducting a hearing. The DRC informed Relator that the next review will take place in June 2023. (*Id*.).

(Doc. No. 12-1, Ex. 45.)

On January 6, 2021, the State moved to dismiss, arguing Lindsay had no constitutional or inherent right to be released before the expiration of his sentence. (Doc. No. 12-1, Ex. 43.) The State averred Lindsay had not challenged the underlying jurisdiction of the court which imposed his sentence; his petition did not warrant relief. (*Id*.) On January 14, 2022, Lindsay filed a reply. (Doc. No. 12-1, Ex. 44.) Upon concluding Lindsay was sentenced under R.C. § 2971.03, the Sexual Violent Predator *Sentencing Law*, not under a Sexual Violent Predator *Specification* under R.C. § 2941.148 as Lindsay alleged, the state appellate court dismissed his petition and issued a *nunc pro tunc* entry correcting his tier of sex offender status. (Doc. No. 12-1, Ex. 45-46.) (emphasis added.)

8

On April 15, 2022, Lindsay appealed the Third District's dismissal of his habeas petition to the Ohio Supreme Court. (Doc. No. 12-1, Ex. 47.) In his brief, Lindsay set forth the following propositions of law:

I. In regards to release of the Appellant on 6/17/2021, the ODRC/OPA; respondents et al., violated Appellant's Fourteenth Amendment due process of law rights, and also denied him equal protection of the law, when holding Appellant after granting him a parole, when a "liberty interest was established, and when the parole was a virtual certainty that demonstrates the role of notice, and as it involved various sources of advocated liberty interest" giving entitlement of release, that the liberty interest is protected by due process.

II. In Appellant's being denied release, the ODRC/OPA, and the Managing and Training Corporation of Utah, (MTC)/North Central Correctional Complex, violated the "ex post facto cause of the Constitution of the United States, Article I § Section 10, by altering Appellant's sentence after denying the parole release, in where there had been a "mutual explicit understanding" that release on parole had been established, and therefore, the "quantum of punishment," inquiry as to whether the change to the sentence after the circumstance of not releasing the Appellant resulted in the altering of the definition of the criminal conduct alleged, increasing the penalty by which the offense is punished, "without" prior notice of the change;

III. The separation of power doctrine prohibits the executive branch of government from over-riding a court's jurisdictional/sentencing entry about what the law requires in an offender's case; neither the executive branch nor the legislative branch of government has authority to "annul, reverse, or modify a judgment that the trial court has already entered its entry, and the district court has already affirmed on appeal." In this appellant's case, the respondents violated Appellant's due process of law rights, and denied him equal protection under the Fourteenth Amendment of the United States Constitution, when their actions were governed by Chapter 5145 of the Revised Code, which governs "al Ohio correctional institutions."

(Doc. No. 12-1, Ex. 48.)

On June 16, 2022, the State filed a response, arguing Lindsay's claims were incognizable upon review, as he had no constitutional right to parole or consideration of parole nor had his sentence expired.

9

(Doc. No. 12-1, Ex. 49.) On August 1, 2022, Lindsay filed a Motion to Strike Appellee's Reply due to failure to provide service. (Doc. No. 12-1, Ex. 50.) On August 16, 2023, the Ohio Supreme Court denied Lindsay's motion to strike, adding that he would have twenty days to file a reply brief. (Doc. No. 12-1, Ex. 51.) On September 6, 2022, Lindsay filed a reply, maintaining he was being illegally held on a "sexually violent predator (SVP) specification," and the associated sanctions were not present nor part of his sentencing. (Doc. No. 12-1, Ex. 52.) Lindsay further argued his constitutional rights were violated pursuant to R.C. § 2976.271. (*Id.*) On March 8, 2023, the Ohio Supreme Court affirmed the judgment of the Third District. (Doc. No. 12-1, Ex. 53.)

## I.    Post-Conviction Relief

On August 1, 2022, Lindsay filed a motion in the trial court to void all judgments pertaining to his case due to a "manifest miscarriage of justice."[6] (Doc. No. 12-1, Ex. 54.) On August 9, 2022, the trial court overruled Lindsay's motion, cautioning Lindsay against frivolous filings that could render him a vexatious litigator. (Doc. No. 12-1, Ex. 55.)

On August 19, 2022, Lindsay filed a motion asserting his "sentence was contrary to law," as the judge lacked authority to sentence him, and the "no-contact order" with the victim or her mother, "although illegal and [is] contrary to law, allowed the (ODRC) -Ohio Department of Rehabilitation & Corrections, the Ohio Adult Parole Authorities, the Adult Parole Board, including the Parole Board Chair person, to be influenced regarding the Risk Assessment Score, directly relating to the release, or the denial of release that may be questioned during parole hearings and the suitability of the individual based on conduct surrounding

---

[6] Lindsay's motion is captioned, "Motion Voiding 'All' Judgments Pertaining to Defendant's Case, and Adjudication Process, Due to a 'Manifest Miscarriage Of Justice,' Inwhere [Sic] The Presiding Judge Harbored a 'Fiduciary Bias,' Which Should Have Disqualified Him Because of Clear 'Appearance Of Impropriety,' Requiring a 'New Trial,' Where the Judge Allowed an Associate's/or Colleague's Influence His Decision-Making Throughout the Trial, and Allowing the Trial to Continue Knowing of Several 'Conflict [Sic] of Interests' [Sic] Were Obvious Between the Prosecutor, a Juror, and the Defense Attorney for the Defendant, Violating 28 U.S.C.S. § 455(A); All Judgments Are Contrary to Law."

the facts associated with the case."[7] (Doc. No. 12-1, Ex. 57.)  On August 30, 2022, the State filed a response.

(Doc. No. 12-1, Ex. 58.) On January 24, 2023, the trial court overruled Lindsay's motion.  (Doc. No. 12-1,

Ex. 66.)

On September 6, 2022, Lindsay appealed the trial court's August 9, 2022 ruling to the Fifth District

Court of Appeals. (Doc. No. 12-1, Ex. 59-60.) In his brief, he raised the following sole assignment of error:

> I. The trial judge, during the adjudication of the defendant's case, was
> obligated to carry out a mandatory dismissal of recusal upon
> himself, in where he harbored an "appearance of impropriety," and
> a "fiduciary bias," when the record showed that the judge
> acknowledged that the alleged victim in this case was the paternal
> granddaughter of his retired bailiff: therefore, all judgments made
> after the information was acknowledged created a "prima facie
> case," Ohio Constitution Article XV, § 7, specified in, Ohio Revised
> Code Ann. § 3.23; Cannon 3(c)(1)(d); 28 U.S.C.S. § 455, & R.C. §
> 2701.031; disqualifying the judge, also, voiding all judgments made
> by trial judge are therefore should be void.

(Doc. No. 12-1, Ex. 60.)

On December 14, 2022, the state appellate court upheld the trial court's judgment. (Doc. No. 12-1,

Ex. 61.)

On January 20, 2023, Lindsay appealed the state appellate court's December 14, 2022 decision to

the Ohio Supreme Court. (Doc. No. 12-1, Ex. 62.) On February 13, 2023, the State filed a response. (Doc.

No. 12-1, Ex. 63.) On March 23, 2023, the Ohio Supreme Court declined to accept jurisdiction. (Doc. No.

12-1, Ex. 64.)

**J.    Second Motion for Resentencing**

On August 19, 2022, Lindsay filed another motion arguing that his sentence is contrary to law, the

no-contact order with the victim was an erroneous sanction illegally applied to his felony, and a request for

---

[7] Lindsay's motion is captioned, "The Sentence is 'Contrary to Law,' Where an Erroneous Sanction was Illegally Applied to and
With a Felony Sentence; in the Form of a 'No-Contact Order,' and the Judge Lacked Authority, Violating Criminal Rule (52),
'Plain Error;' Also, the Sentencing Entry was Without Restitution, Fees, and Cost, Therefore, Does Not Apply, and Cannot be
Added Years After the Proceedings of the Case."

resentencing.[8] (Doc. No. 12-1, Ex. 65.) On January 24, 2023, the trial court overruled his motion. (Doc. No. 12-1, Ex. 66.)

### K.     Second Federal Habeas Petition

On August 24, 2023,[9] Lindsay filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:  Plaintiff was denied Fourth Amendment "Due Process Right" and "Equal Protection," after being [sic] "Parole; scheduled for release 6/17/2021," then denied release without a sound Constitutional proceeding or procedural due process "revocation," THEREFORE, entitled to immediate release.
>
> **Supporting Facts**: Plaintiff, on 1/18/2021, was informed, by NCCC/Marion Unit Case Manager, Ms. M. Taylor, that he was granted release on parole; that the release was scheduled for 6/17/2021. Plaintiff was asked to sign the release documentation; a two page DRC-3019-E form (Conditions of Supervision – Exhibit – 001); (Exhibit – 002 – Waiver of Extradition/PRC) that was to start on 6/21/2021, explained to be delayed because of the weekend – being released n a Friday, 6/17/2021 and Monday being 6/21/2023; (Exh. 003 – Parole officer info. Melissa Hunt); (Exh. 004- Grievance Procedure); (Exh. 005(3 Pg.) – Reinstatement of Drivers License, Applications for Ohio Benefit Bank – SNAP Food Assist., and Medicaid); (Exh. 006 – Residential Placement – OCIS ENTRY from the ODRC Website confirming that Plaintiff was documented, by the ODRC, as being released; Supervision Start Date 6/17/2021, (received 6/22/2021), and while the documented information was brought to the attention of the Defendants, a reasonable time for the Defendants, to resolve the issue has passed, and the plaintiff remains "unlawfully imprisoned."
>
> **GROUND TWO**: North Central Correctional Complex/Management & Training Corporation (MIC), violated the "Ex Post Facto Clause" of the United States Constitution, Article 1, (sic) § section 10, by altering Appellant's sentence, therefore, the "quantum of punishment increased" after the rescinding.

---

[8] The caption of Lindsay's motion is the same as his first motion for resentencing. (*See* Doc. No. 12-1, Exs. 57, 65, 66.)

[9] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until August 24, 2023, Lindsay states that he placed it in the prison mailing system on August 3, 2023. (Doc. No. 1 at 15.) Thus, the Court will consider the Petition as filed on August 3, 2023.

**Supporting Facts**: The due process clause protects the interest of fair notice, in regards to a sentence handed down by a trial court, where "Fair Notice" may be compromised by retroactive legislation prevents the "quantum of punishment" to increase the punishment for a sentence "after" the Sentence Entry. After the sentencing of this case, Appellant understood what was written about the sentence; that, after 10 years, according to [(S.B. 2)][10], Appellant would be considered for parole. After serving the minimum term, Appellant was "paroled" 6/17/2021, and NCCC stopped the parole process without the authority to do so, and notified the ODRC, who then participated in acquiescence – a Civil Conspiracy, then through "cat's paw and "rubber-stamping," created a tacit agreement, agreeing amongst themselves; (the ODRC and NCCC), that no parole was granted, then adding, to Appellant's sentence, exaggerated sanctions of [(S.B. 260)] when those sanctions were already made apart of the determination of release on parole, then acting as if those sanctions were never considered, in doing so, used (SB60) (sic), "after the determination to release was finalized," then added two years; from 6/17/2021-to-6/1/2023, then from 6/1/2023-to-6/1/2025, without a meaningful parole consideration hearing.

**GROUND THREE**: Violation of the Separation of Power Doctrine; prohibits the Executive Branch of Government from overriding a Court's Judgment Entry about what the law requires in a case. Therefore, Appellant's sentence could not be annulled, or modified from what the Court determined.

**Supporting Facts**: The ODRC/OAPA, and NC do not have immunity from Constitutional Violations of Due Process of Law, and the sentence, in this case, has been understood, executed, and served, until release on parole was granted 1/18/2-21, (sic) at which time a liberty interest had been formed, that the Appellant was scheduled for release, and by the discretionary power of the Parole Authority (sic) However, After parole has been granted, their discretionary power, for that particular matter, no longer exist; that particular individual, according to 105-PBD-11(V); POLICY: "It is the policy of the ODRC, that 'if a Court sentences an offender as a sexually violent predator, [* * *] … that the parole board shall determine to terminate control of the prison term after the minimum portion of the sentence is served; (that would mean, the ODRC "can" override the sentencing court's judgment), as I was sentenced without a (SVP) specification attached to my sentence; a violation of the Separation of Power Doctrine, and the Ex Post Facto Clause.

**GROUND FOUR**: The Ohio Supreme Court's Entry concerning Appellant's Case No. 0402; from App. No. 9-21-43, Third Dist. Marion,

---

[10] Lindsay interchanges "S.B. 2" with "S.B. 260" throughout his Petition and Traverse. S.B. 260 pertains to Ohio's sexually violent predator laws.

Ohio, was erroneous, and did not apply to the subject matter of the appeal and the issues; that, the discretionary power to release Appellant on parole was made despite SB 260.

**Supporting Facts**: The decision of the Ohio Supreme Court; in their conclusion, the (sic) asserted that: Lindsay has alleged that DRC misinformed him about his parole status." This is not true, and not "the" issue…pertaining to the appeal. Appellant was not "misinformed," due to it had been established that, a release on parole was "granted." It was the staff of (NCCC) that stopped the release, but without a legal standing procedure to stop a release that was scheduled. NCCC nor MIC, or the ODRC has a policy, administrative rule, or any authority that authorizes a staff person(s) to rescind, revoke or stop the release of an inmate that has been notified of a scheduled release on parole; stating that Appellant was sentenced pursuant to [(S260)] only means that, in making the determination to release Appellant, on parole, considered SB260 as a determining factor, and yet, the Parole Board-Parole Authority, the ODRC, and all agencies associated with release agreed that release on parole would occur 6/17/2021; at 7:45 a.m. the (sic) morning of 6/17/2021, "before the ODRC opened for business, the release was in progress, and was stopped violating Appellants "liberty interest due process rights under the Fourteenth Amendment to the Constitution of the United States; due process of law.

(Doc. No. 1.)

On January 23, 2024, Warden Thomas Watson ("Respondent") filed a Return of Writ. (Doc. No. 12.) On February 16, 2024, Lindsay filed a Traverse.  (Doc. No. 13.)  On May 8, 2024, Lindsay filed a "Leave of the Court to file an Amendment to the Facts; Double Jeopardy, etc." (Doc. No. 15.) On May 31, 2024, Lindsay's filing was denied.  (Doc. No. 16.)

### III.    Second Habeas Petition

The AEDPA greatly restricts the power of federal courts to award habeas relief to state prisoners who have already filed § 2254 petitions. As amended by the AEDPA, 28 U.S.C. § 2244 provides:

(1)    A claim presented in a second or successive habeas corpus application under § 2254 that was presented in a prior application shall be dismissed.

(2)    A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless:

> (A)  the applicant shows that the claim relies on a new rule of
> constitutional law, made retroactive to cases on collateral review by
> the Supreme Court, that was previously unavailable; or
>
> (B)
>> (i) the factual predicate for the claim could not have been discovered
>> previously through the exercise of due diligence; and
>>
>> (ii) the facts underlying the claim, if proven and viewed in light of the
>> evidence as a whole, would be sufficient to establish by clear and
>> convincing evidence that, but for the constitutional error, no
>> reasonable factfinder would have found the applicant guilty of the
>> underlying offense.

28 U.S.C. § 2244(b).

Before filing a second or successive § 2254 petition, the petitioner must first obtain an order "authorizing the district court to consider" the petition from the appropriate court of appeals. 28 U.S.C. § 2244(a)(3). Under the AEDPA, there are very limited circumstances in which a prisoner's "second or successive" petition may be considered, as opposed to simply dismissed. 28 U.S.C. § 2244(b)(2). The circuit court has jurisdiction over "second or successive" petitions and is authorized to grant the district court jurisdiction to consider petitions of this nature in limited circumstances. 28 U.S.C. § 2244(b)(3).

If it is unclear at the outset whether a subsequent petition is "second or successive" within the meaning of the statute, the district court must classify the petition accordingly. *In re Smith*, 690 F.3d 809, 809-10 (6th Cir. 2012). If the district court finds a petition to be "second or successive," it may be transferred to the circuit or dismissed; if not, the district court has jurisdiction to consider the petition on the merits.

"Second or successive" is a term of art within the statute, considering the content of a subsequent habeas petition rather than taking a strictly textualist approach. *See Slack v. McDaniel*, 529 U.S. 473, 486 (2000); *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). In developing the term "second or successive" within the meaning of the AEDPA, courts have relied on case law interpreting the abuse of writ doctrine, which preceded the AEDPA. *See, e.g., Slack*, 529 at 486 ("[P]re-AEDPA law governs, though we do not

15

suggest the definition of second or successive would be different under AEDPA."); *Panetti*, 551 U.S. at 943-44 ("The phrase 'second or successive' is not self-defining. It takes its full meaning from our case law, including decisions predating the enactment of [AEDPA]."). An abuse of writ with respect to a second petition occurs when the petitioner "rais[ed] a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice." *McCleskey v. Zant*, 499 U.S. 467, 489 (1991); *see also Delo v. Stokes*, 495 U.S. 320, 321-22 (1990) (holding a subsequent petition to be an abuse of writ when the claims "could have been raised in his first petition for federal habeas corpus.").

When applying the principles of abuse of writ to AEDPA standards, the term "second or successive" asks whether the petitioner had a full and fair opportunity in the initial petition to assert the grounds for relief raised in a subsequent petition. *Magwood v. Patterson*, 561 U.S. 320, 344-45. In *Stewart v. Martinez-Villareal*, 523 U.S. 637, 645 (1998), the Court held that a claim dismissed as unripe in a previous petition was not "successive" because the "petitioner [did] not receive an adjudication of his claim."

Several circuits have held that §2244(b)'s limitations on second or successive petitions do not apply to a numerically second petition challenging a parole determination or disciplinary hearing that occurred after the prisoner's initial petition was filed. *See In re Jones*, 652 F.3d 603, 606; *In re Cain*, 137 F.3d 234, 236–37 (5th Cir.1998) (challenge to disciplinary revocation of good-time credits); *Crouch v. Norris*, 251 F.3d 720, 723–24 (8th Cir.2001) (challenge to parole determination); *Hill v. Alaska*, 297 F.3d 895, 897–99 (9th Cir.2002) (challenge to parole determination); *see also Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir.2005) (noting that a challenge to a parole determination would not constitute a "second or successive" petition under § 2244 if "the claim had not arisen or could not have been raised at the time of the prior petition," but holding prisoner's claim barred because the parole board had rendered an identical determination before his initial petition was filed.)

16

Here, Lindsay's first federal habeas petition was filed in 2013. Lindsay's current habeas petition is challenging the decision the Parole Board made in June 2021, years after the litigation of his first habeas petition concluded. Like the claims in *Panetti* and *Martinez-Villareal*, Lindsay's current claims were unripe when his initial petition was filed; the events giving rise to his claims had not yet occurred. As a result, the Court recommends that Lindsay's claims not be classified as "second or successive," and therefore Lindsay need not obtain permission from the Sixth Circuit to proceed.

## IV. Exhaustion and Procedural Default

### A. Legal Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[11] *Id.*

---

[11] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n.28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are

---

"cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v.Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v.*

19

*Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

### B.  Application to Petitioner

Here, Lindsay fairly presented his First, Second, and Third habeas grounds to the Ohio courts. Lindsay procedurally defaulted on his Fourth Ground for Relief due to his failure to fairly present it to the Ohio courts. His Fourth Ground alleges the Ohio Supreme Court's March 8, 2023 Judgment Entry affirming the court of appeals decision dismissing Lindsay's petition for writ of habeas corpus "was erroneous, and did not apply to the subject matter of the appeal and the issues . . ." (Doc. No. 1.) This claim was never raised to the Ohio Supreme Court. Ohio R. Prac. S. Ct. 18.02 provides that a Motion for Reconsideration must be filed within ten days after the Supreme Court's judgment entry. *See* Ohio R. Prac. S. Ct. 18.02(A). Here, Lindsay failed to file a Motion for Reconsideration with the Ohio Supreme Court to provide the Court an opportunity to hear his claim and "fix" any alleged errors. The remedy of filing a Motion for Reconsideration is no longer available to Lindsay because he failed to file within the 10-day time period. Because the state court was denied the opportunity to review Lindsay's claim due to Lindsay's failure to raise the issue within the time provided by the rule, the Fourth Ground is procedurally defaulted. *See O'Sullivan,* 526 U.S. at 848; *Engle*, 456 U.S. at 125 n.28.

Despite this failure, Lindsay can obtain merits review if he can show both cause and prejudice.  *See Maupin*, 785 F.2d at 138–39. To show cause, an external factor must be shown to impede efforts to comply with the procedural rule. *See Franklin*, 434 F.3d at 417. Prejudice is not shown unless Lindsay demonstrates that there is a "reasonable probability" that the outcome would have been different.  *See Mason,* 320 F.3d at 629. Here, Lindsay failed to set forth any argument as to cause of his procedural default, instead focusing his Traverse on alleged sentencing issues. (Doc. No. 13.)

In the absence of cause, a court need not reach the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000); *Sandridge v. Buchanan*, 1:16CV2299, 2017 WL 2255378, at *11 (N.D. Ohio April 27, 2017); *Grp. v. Robinson*, 158 F. Supp. 3d 632, 651 (N.D. Ohio 2016)

Finally, Lindsay proffered no new, reliable evidence to support actual innocence. (Doc. No. 13.) The Court finds Lindsay has not demonstrated he is entitled to the actual innocence exception.

Lindsay's Fourth Ground is procedurally defaulted.

## V.    Review on the Merits

### A.  Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). Indeed, the Supreme Court has indicated that circuit precedent

does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, ⸺ U.S. ⸺, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.  See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it

would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

## B.  Grounds One, Two, and Three

In his First Ground for Relief, Lindsay argues his constitutional rights to due process and equal protection of law were violated when the Parole Board denied his release without a revocation hearing. (Doc. No. 1 at 5.) In his Second and Third Grounds for Relief, Lindsay claims violations of the "ex post facto clause" and the separation of powers doctrine, stemming from the same issue and facts.[12] (*Id*. at 7-8.)

Respondent argues that a state parole decision is not cognizable in federal habeas proceedings. (Doc. 12 at 15-19.) Respondent states Lindsay has "no constitutional or inherent right to be released before the expiration of a valid sentence." (*Id*. at 16.) Respondent asserts the Parole Board's decision to grant release and later rescind did not create a basis for a constitutional claim in federal habeas review. (*Id*. at 18.)

In response, Lindsay maintains the sentence is void because the sentence enhancement provision of O.R.C. § 2971 did not confer authority upon the trial court to enhance his sentence. (Doc. 13 at 1.) Lindsay maintains that private contracted employees may not interfere with an order of release on parole, alleging his release was improperly stopped by NCCC staff. (*Id*. at 2.)  Lindsay claims that even though he was not

---

[12] It appears Lindsay was under the misconception that he was being held pursuant to a sexually-violent-predator specification, however, the record reflects that Lindsay was instead sentenced pursuant to the sexually-violent-predator sentencing law. While the Parole Board may have changed its decision regarding Lindsay's parole, the decision was not based on an uncharged specification. (*See* Doc. 12-1, Exs. 45, 53.)

sentenced pursuant to a "sexually violent predator" specification, this "misinterpreted sanction has caused the ODRC to incarcerate the petitioner's sentence after his confirmed release date . . ." (*Id*. at 10.) Lindsay raised several other novel arguments in his Traverse, including that his conviction should have been determined to be against the manifest weight of evidence, the jury verdict forms were not compliant with O.R.C. § 2945.75(A)(2), and that he was born with "tongue-tie", which would have restricted tongue movements and rendered him unable to physically commit the act of which he was accused. (*Id*. at 17, 18.)

The Ohio Supreme Court considered these claims on direct appeal, and rejected them as follows:

> {¶ 9} Pursuant to R.C. 2967.271, it is presumed that a person who is sentenced to a nonlife, indefinite prison term will be released from prison after the expiration of his minimum sentence. R.C. 2967.271(B). Relying on this law, Lindsay argues that DRC established his "presumptive release date" as June 17, 2021, and that by giving him that date, DRC created a liberty interest that is protected by the state and federal due-process clauses.

> {¶ 10} R.C. 2967.271 was adopted as part of the Reagan Tokes Law, 2018 Am.Sub.S.B. No. 201, effective March 22, 2019. And the Reagan Tokes Law applies only to felonies committed on or after its effective date. *See* R.C. 2901.011; R.C. 2929.14(A)(1)(a) and (A)(2)(a); R.C. 2929.144(A) and (B); *see also State v.Meeks*, 6th Dist. Ottawa No. OT-22-015, 2022-Ohio-2436, ¶ 7. Lindsay was not sentenced pursuant to the Reagan Tokes Law, so its provisions do not apply to him.

> {¶ 11} Lindsay also asserts that when he signed that paperwork in connection with his prospective release, it "established a mutually explicit understanding between [DRC] and [Lindsay], that he would indeed be released 6/17/2021." Lindsay therefore asserts in his first proposition of law that when DRC canceled his release, it violated his due-process and equal-protection rights. But an inmate has no constitutional right to be released on parole before the expiration of his sentence. *State ex rel. Bailey v. Ohio Parole Bd.*, 152 Ohio St.3d 426, 2017-Ohio-9202, 97 N.E.3d 433, ¶ 9. And Lindsay cites no authority for his novel suggestions that a mistake by an agent of DRC conferred a vested right to immediate release or that DRC's mistake created a binding contract.

> {¶ 12} Nevertheless, even assuming that Lindsay could establish a vested liberty interest, his remedy for an alleged procedural-due-process violation would not be immediate release from prison. Instead, his claim that DRC's review procedures violated his procedural-due-process rights would at most entitle him to a writ of mandamus compelling a second review. *See State ex*

24

*rel. Ellison v. Black*, 165 Ohio St.3d 310, 2021-Ohio-3154, 178 N.E.3d 508, ¶ 12; *Scarberry v. Turner*, 139 Ohio St.3d 111, 2014-Ohio-1587, 9 N.E.3d 1022, ¶ 14. We overrule Lindsay's first proposition of law.

{¶ **13**} Lindsay's remaining propositions of law are merely extensions of the argument in support of his first proposition of law. In his second proposition of law, Lindsay asserts that DRC violated the Ex Post Facto Clause of the United States Constitution when it imposed a sexually-violent-predator specification on him that was not in his sentencing entry. And in his third proposition of law, he contends that DRC violated the separation-of-powers doctrine by imposing a sentence that was different from the one imposed by the trial court. The Third District correctly addressed these claims, noting that Lindsay was not convicted of a sexually violent-predator *specification* but was instead sentenced pursuant to the sexually violent-predator *sentencing law*. In other words, while DRC allegedly changed its mind about Lindsay's parole, it did not base that decision on an uncharged specification. We therefore overrule Lindsay's second and third propositions of law.

*State ex rel. Lindsay v. Dept. of Rehab. & Corr.*, 170 Ohio St.3d 480, 2023-Ohio-689.

For the following reasons, it is recommended that Lindsay's First, Second, and Third Grounds for Relief be denied. Incarcerated individuals have no inherent constitutional right, or liberty interest, to parole. *Parsons v. Money*, No. 5:05CV1589, 2006 WL 4094361, *9 (N.D. Ohio October 6, 2006), *report and recommendation adopted as modified*, No. 5:05-CV-15892007 WL 649283 (N.D. Ohio February 26, 2007); *State ex rel. Miller v. Leonard*, 88 Ohio St.3d 46, 47, 723 N.E.2d 114, 115 (2000), ("there is no constitutional or inherent right to be released before the expiration of a valid sentence."); *see also Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 97 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979); *State ex rel. Hogan v. Ghee*, 85 Ohio St.3d 150, 151, 707 N.E.2d 494, 495 (1999).

The United States Supreme Court made clear that a unilateral expectation of release on parole is not enough to constitute a protected liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972.) If state law entitles an inmate to release on parole, that entitlement is a liberty interest which cannot to be taken away without due process. *See Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). However, "the inmate must . . . have a legitimate claim of entitlement to it."

*Id.* "Only state law can create this 'legitimate claim of entitlement;' the federal constitution protects such claims but does not create them." *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (1991). In *Greenholtz,* the Supreme Court held that absent an expectancy interest in release created by state statute or regulation, an inmate has no state created protected liberty interest in parole. 442 U.S. 1; *see also*, *Board of Pardons v. Allen*, 482 U.S. 369 (1987); *Jago v. Van Curen*, 454 U.S. 14, 19-21 (1981). Both Ohio's statutory scheme as well as the administrative guidelines of the Ohio Adult Parole Authority (OAPA) place the decision to grant parole within the discretion of the OAPA. *See* O.R.C. §2967.03; O.A.C. §5120:1–1–07; *Wagner v. Gilligan*, 609 F.2d 866, 867 (6th Cir. 1979) (per curiam). "The law of Ohio gives a convicted person no legitimate claim of 'entitlement' to parole before the expiration of a valid sentence of imprisonment." *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.,* 929 F.2d 233, 235 (6th Cir. 1991).

The Sixth Circuit has held that "there is no fundamental right to parole under the federal constitution." *Jackson v. Jamrog*, 411 F.3d 615 (6th Cir. 2005); *see also Brooks v. Eppinger*, 1:16cv1017, 2016 U.S. Dist. LEXIS 175809 (N.D. Ohio Sept. 20, 2016), *adopted by* 2016 U.S. Dist. LEXIS 175810 (N.D. Ohio Dec. 19, 2016) (holding that the petitioner's challenge to the Parole Board's notation that differed from the judgement entry was not cognizable).

In *Jago*, an inmate was notified by the Ohio Parole Board that he had "earned the opportunity of parole and eventually a final release from [his] conviction." 454 U.S. at 15. The inmate attended pre-release classes and was measured for civilian clothes. *Id.* After meeting with the inmate, the Parole Board decided to rescind the parole opportunity. *Id.* On habeas review, the U.S. Supreme Court concluded the decision of the Ohio Parole Board did not constitute a legitimate claim of entitlement. *Id.* at 20. In another case, when the Parole Board revoked the grant of parole just before release from custody, this Court held:

> Petitioner fails to demonstrate a cognizable violation of procedural due process as guaranteed by the Fourteenth Amendment. It is well established

> that incarcerated individuals have no inherent constitutional right to parole regardless of whether a specific release date has been granted. *Greenholtz,* 442 U.S. at 7; *Inmates of Orient Corr. Inst.,* 929 F.2d at 235. Admittedly, the Supreme Court has repeatedly expressed its acknowledgment that rescission of a given parole date can devastate the hopes and expectations of individuals in custody. *Jago,* 454 U.S. at 17; *Inmates of Orient Corr. Inst.,* 929 F.2d at 236. However, until such time that a prisoner is actually released on parole, the inmate's expectation of liberty does not mature into a full-fledged liberty interest sufficient to trigger the procedural due process protections of the Fourteenth Amendment. *Jago,* 454 U.S. at 14-18.

*Bell v. Anderson,* No. 1:05-CV-2415, 2006 WL 2864121, at *5 (N.D. Ohio Sept. 29, 2006), *aff'd*, 301 F. App'x 459 (6th Cir. 2008).  The *Bell* Court further stated, "The circumstances surrounding the rescission of Petitioner's release date are certainly regrettable. However, Petitioner has failed to present a claim for relief that is cognizable in federal habeas corpus." *Id.*

Here, Lindsay failed to provide a meaningful basis for the Court to conclude that he had a legitimate claim of entitlement to release that should be afforded constitutional protection. It is undisputed that Lindsay's maximum sentence is for life. *Inmates of Orient*, 929 F.2d at 235 (a convicted person has no claim of entitlement to parole before the expiration of a valid sentence). The circumstances here, where the Parole Board granted release and then revoked same, does not constitute a legitimate claim of entitlement sufficient to trigger the procedural due process protections of the Fourteenth Amendment.  *Bell v. Anderson*, 2006 U.S. Dist. LEXIS 75883.

Thus, the undersigned finds that Lindsay's claims fail on the merits. It is therefore recommended that Grounds One, Two, and Three be DENIED.

## C.  Ground Four

In his Fourth Ground for Relief, Lindsay alleges the Ohio Supreme Court's March 8, 2023 Judgment Entry affirming the court of appeals decision dismissing Lindsay's petition for writ of habeas corpus "was erroneous, and did not apply to the subject matter of the appeal and the issues . . ." (Doc. No. 1.)

Respondent asserts that Lindsay's Fourth claim is non-cognizable because federal law has established that an error in post-conviction relief is not cognizable. (Doc. 12 at 19.) Respondent further states that a federal habeas court cannot consider errors of a state court's decision. (*Id*. at 20.)

The United States Supreme Court has long held that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990). "[S]tates have no constitutional obligation to provide post-conviction remedies."  *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)).  The Sixth Circuit has explained:

> . . . errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton,* 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker,* 316 F.3d 557, 571 (6th Cir.2002). We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Kirby,* 794 F.2d at 246 (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby,* 794 F.2d at 247. "Though the *ultimate* goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue [ ] . . . is not in any way related to the confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell,* 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [*sic*] provide a basis for federal habeas relief" (citing *Kirby,* 794 F.2d at 247)); *Greer v. Mitchell,* 264 F.3d 663, 681 (6th

Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).

A federal habeas court does not function as an additional state appellate review court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). Thus, a federal habeas court cannot consider alleged errors regarding a violation of state law or a state court's decision applying state law since these errors are not of a constitutional magnitude. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Watters v. Hubbard*, 725 F.2d 381, 383 (6th Cir. 1984). Federal courts must accept as valid a state court's interpretation under state law of the statutes and rules of that state. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

Here, Lindsay's claim that the Ohio Supreme Court erred in its opinion does not dispute his underlying conviction or detention, and is thus, non-cognizable. *Kirby,* 794 F.2d at 247-48. Lindsay's Fourth Ground complains that the Ohio Supreme Court's opinion was "erroneous" in relation to S.B. 260, the sexually-violent-predator sentencing law. (Doc. 1.) Federal habeas review is reserved for federal constitutional claims, not for reviewing alleged errors of state courts. Lindsay's Fourth Ground is non-cognizable. It is therefore recommended that Ground Four be DENIED.

## VI.    Conclusion

For all the reasons set forth above, it is recommended that Lindsay's claims not be found as "second or successive" and that the Petition be DENIED.

Date: March 4, 2025                                  *s/ Jonathan D. Greenberg*
                                                          Jonathan D. Greenberg
                                                          United States Magistrate Judge

29

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).